[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
Plaintiffs, doing business as Marco Realty, owned property at 998-1000 West Main Street, New Britain. Defendant, Thomas Schmelter operated a home design business. When defendant first became plaintiffs' tenant, he occupied premises on the first floor. The second floor contained two residential apartment units. Although the witnesses disagree as to the date, in either 1984 or 1985, Mr. Schmelter asked for space on the second floor. He took occupancy of a five room unit on the second floor for which he paid $400.00 monthly. In 1985, he told Mark Occhialini that he needed more space and discussed with him taking over the seven room unit on the second floor when the tenant vacated it. In late 1985, Schmelter met with Adorna Occhialini Carroll about using that unit. He proposed changes to both units to make them suitable for his commercial use and provided her with a floor plan. According to Mr. Schmelter, Ms. Carroll approved the floor plan and agreed that he could make the changes proposed at his own expense. Schnelter also wanted the landlord to provide an outside rear staircase and to enlarge the parking area. The parties also discussed signing a lease. In March, 1986, plaintiffs drafted a five year lease and sent it to defendant. Plaintiffs' witnesses, Ms. Carroll and Antonio Occhialini, testified that defendant was told that a lease was necessary before he could do the renovations he proposed and that Mr. Schmelter told them that a five year lease was too long, but that three years would be acceptable. Mr. Schmelter, however, did not return the draft of the lease marked up with his proposals to Ms. Carroll until July, 1986. The parties never did execute a lease.
Mr. Schmelter made monthly rental payments of $950.00 for both units for the months of March, April and May, 1986 and of $1150 for the months of June through November, 1986. Defendant vacated the premises on December 13, 1986. He acknowledged that he paid no rent for December. As a month to month tenant, he owes $482.30 for this thirteen days of occupancy in that month. Plaintiffs had received a $400.00 security deposit from defendant, leaving a balance due plaintiffs of $82.30 for defendant's use and occupancy in December.
Plaintiffs also claim that defendant is liable for the cost of restoring the premises to two separate residential units. Defendant began his renovations on the second floor in March, 1986. He had a dumpster outside to contain the debris from the work. As part of the renovations, defendant removed the wall between the two units, the bathtubs from both bathrooms and a kitchen sink. He upgraded the electrical service, installed new sheetrock, wallpaper and paint, He argues that plaintiffs were aware of the changes he was making and, by taking no steps to stop him, acquiesced in them. While defendant further claims he is entitled to be reimbursed for his costs of renovation, that claim is untenable in light of his agreement with his landlord that he would be responsible for the CT Page 4061 costs of his renovations. There was no agreement between the parties that the defendant would restore the premises to separate units before or after vacating. While the evidence showed that the parties at one point in their relationship expected to enter into a lease, they never did because they could not reach agreement on its terms. The conduct of the parties themselves belies the existence of an agreement. See Brighenti v. New Britain Shirt Corp., 167 Conn. 403, 406-407 (1974). Plaintiffs did not begin work on the staircase or the parking lot. While one of the plaintiffs ws was on the premises and expressed satisfaction with the work defendant had done, he was not told to stop work. There was no evidence from which one could infer an agreement that defendant would restore the premises to separate units.
Even were the court to find such an obligation under a quasi-contract theory, plaintiffs still have the obligation to prove their damages. Plaintiff spent about $6,000 to put up a wall in place of the one defendant removed. While damages for breach of contract regarding real estate are limited to the diminution in value of the property, that may be determined by the cost of restoration if the restoration does not enhance the value of the property over what it was before the injury. Spera v. Audiotape Corp., 1 Conn. App. 629, 633 01984). Defendant paid monthly rental of $950.00 for both units in March, 1986 when he began renovation. Plaintiffs rented the five room unit for $750 and the seven room unit is occupied by a month to month tenant. Plaintiffs' witnesses testified that the rent for the five room unit was reduced since the tenant agreed to do some of the renovation. No evidence was offered on the rent paid for the other unit. However, the rental charged for the smaller unit alone is enough to indicate that the cost of restoration is not the appropriate measure of diminution in value. Spera v. Audiotape Corp., supra. Plaintiffs have not proved their damages beyond the rent due of $82.30.
SUSCO, J.