JULES S. LEBLANC *v.* TRI-TOWN SHELTER SERVICES, INC.
(AC 29120)

Gruendel, Harper and Lavine, Js.

---

Submitted on briefs June 3—officially released September 9, 2008

*Susan Boyan* filed a brief for the appellant (defendant).

*Bruce J. Comollo* filed a brief for the appellee (plaintiff).

*Opinion*

GRUENDEL, J. The defendant, Tri-Town Shelter Services, Inc., appeals from the judgment of the trial court awarding the plaintiff, Jules S. LeBlanc, unpaid rent for occupancy of the plaintiff's premises, and dividing the cost of repairing the premises equally between the plaintiff and defendant. The defendant claims that the court

(1) improperly determined that the defendant owed the plaintiff either rent or the reasonable cost of use and occupancy of the building and (2) abused its discretion in dividing the cost of repair to the building between the plaintiff and defendant. We affirm in part and reverse in part the judgment of the trial court.

The facts set forth in the court's memorandum of decision largely are undisputed.[1] The defendant was a long-term tenant of the plaintiff, having leased a 10,000 square foot space at 1-A Prospect Street, Rockville, from the plaintiff beginning in December, 1986, for use as a homeless shelter. The first lease ran from the period of December 1, 1986, to November 30, 1989, at a rate of $833.34 per month for the first year and $1250 per month thereafter. Between 1989 and 2001, the parties entered into five additional leases providing for continued tenancy by the defendant at a monthly rental rate ranging from $1414.58 in 1989 to $2200 in 2001. The most recent lease expired on September 30, 2001.

On September 16, 2001, the plaintiff sent the defendant a proposed new lease providing for monthly rent of $2500, a $300 per month increase, which the defendant refused to sign. Also in September, 2001, the plaintiff and defendant had a meeting at which they discussed the rental increase. The plaintiff testified at trial that the defendant "agreed [to] bring the rent up to date, but it never did." The defendant denies ever agreeing to the rental increase and continued paying $2200 per month. The plaintiff sent letters to the defendant on November 20, 2001, and February 19, 2002, requesting payment of past due rental amounts of $300 per month.

---

[1] The defendant filed a certification that no transcript of the trial proceedings was deemed necessary pursuant to Practice Book § 63-4 (a) (3). We glean the facts of the case from the court's memorandum of decision and the pleadings and exhibits filed.

In January, 2004, more than two years after the lease term expired, the defendant finally vacated the premises, the whole time having paid rent of $2200 per month. The defendant never made any rent payment for January, 2004, and told the plaintiff to use the $2200 security deposit for that purpose. The court found that at the time the defendant vacated the building, there was damage requiring $26,398 in repair costs.

The plaintiff filed a two count complaint claiming damages of (1) $8400 as the total of $300 per month for the twenty-eight months spanning from October 1, 2001, through January 31, 2004, and (2) $26,398 for damage caused to the building. The defendant denied liability on both counts and counterclaimed, alleging that it had paid for repairs to the building that were the responsibility of the plaintiff. The court found in favor of the plaintiff on the first count of the complaint. It awarded the plaintiff $8400 in back rent under the holdover provisions of the lease or, alternatively, for the fair rental value for use and occupancy pursuant to General Statutes § 47a-3c.[2] As to the second count, the court was unable to ascertain the extent to which the damage to the premises was attributable to each party. It therefore divided the cost of repair equally between the parties. Finally, as to the counterclaim, the court found that the defendant had replaced a water heater, which was the plaintiff's responsibility, and awarded the defendant $1057 for its cost.

This appeal followed in which the defendant claims that the court improperly awarded the plaintiff (1) back

---

[2] We have held that recovery under § 47a-3c is a distinct cause of action and that the section must be specifically invoked in the complaint or explicitly raised and litigated at trial. *New Haven* v. *Mason*, 17 Conn. App. 92, 96, 550 A.2d 18 (1988). Although the complaint makes no mention of recovery for use and occupancy under § 47a-3c, we note that the issue was explicitly raised in the plaintiff's trial brief. See id. (noting that complaint, trial briefs and memorandum of decision may be considered to determine if issue of use and occupancy adequately raised at trial).

rent or fair rental value for the use and occupancy of the building and (2) one half of the repair costs. Both of the defendant's claims challenge the damages awarded by the court, "which we generally review under the abuse of discretion standard." *Sproviero* v. *J.M. Scott Associates, Inc.*, 108 Conn. App. 454, 462, 948 A.2d 379, cert. denied, 289 Conn. 906, 957 A.2d 873 (2008). "The trial court has broad discretion in determining whether damages are appropriate. . . . Its decision will not be disturbed on appeal absent a clear abuse of discretion." (Citation omitted.) *Robert S. Weiss & Associates, Inc.* v. *Wiederlight*, 208 Conn. 525, 541, 546 A.2d 216 (1988).

I

The court articulated two bases for determining that the defendant owed $8400 to the plaintiff. First, it determined that such an amount was due under the holdover provision of the 2001 lease. It also found that even if that provision was inapplicable, the same amount would be due as the fair rental value for the use and occupancy of the premises pursuant to § 47a-3c.

Section 47a-3c provides: "In the absence of agreement, the tenant shall pay the fair rental value for the use and occupancy of the dwelling unit." We note at the outset that although the court awarded damages under either the 2001 lease agreement or the statute, it did not make a finding that any agreement between the parties controlled during the period between September 30, 2001, and January, 2004.[3] Neither party requested that the court articulate such a finding, and so we operate under the premise that there was an

[3] Much of the parties' disagreement focuses on the construction and application of the 2001 lease agreement. The record indicates, however, that the parties relied on and represented to the court language that did not appear in the 2001 lease agreement. The applicable contract language addressed by the court, namely, the holdover provision, is not contained in the 2001 lease but, rather, in an earlier lease agreement between the parties. Neither party addressed this discrepancy on appeal.

"absence of agreement." See *Rivera* v. *Double A Transportation, Inc.*, 248 Conn. 21, 33–34, 727 A.2d 204 (1999) (discussing parties' responsibilities to ensure adequacy of record); Practice Book § 66-5. We therefore do not address the question of whether the lease applied and instead determine whether the court abused its discretion in awarding damages for the fair rental value under § 47a-3c.

Although the determination of the measure of damages is within the discretion of the trial court, we must first address the threshold question of whether the court properly calculated the fair rental value of the property. A court's determination of fair rental value is one of fact that we will reverse only if it is clearly erroneous. *Fernandes* v. *Rodriguez*, 90 Conn. App. 601, 620, 879 A.2d 897 (2005). "Under Connecticut law, use and occupancy, by definition, is an amount equal to fair rental value . . . . It is the amount to which the landlord is entitled after the rental agreement has been terminated . . . ." (Citation omitted.) *Rivera* v. *Santiago*, 4 Conn. App. 608, 611, 495 A.2d 1122 (1985). In the present case, the court explicitly found that this 13 percent increase in rent to $2500 per month was reasonable and represented the fair rental value for use and occupancy under § 47a-3c.[4] We agree with the court that "[t]here was no evidence offered, and it is not conceivable that one could argue that $2500 per month for 10,000 square feet of space is not reasonable . . . ." Consequently, the finding as to fair rental was not clearly erroneous, and the court, therefore, did not abuse its discretion in awarding the difference between the amount actually paid and the fair rental value.

In addition, the defendant argues that by accepting the monthly payments of $2200, the plaintiff consented

---

[4] The defendant relies heavily on *Welk* v. *Bidwell*, 136 Conn. 603, 73 A.2d 295 (1950), as precedent in support of its arguments on appeal. In that case, the trial court did not make a specific finding as to the reasonable fair rental value. Id., 609. Because the court did make such a determination in the present case, *Welk* is inapplicable to our review.

to the payment of that amount. The court determined, however, that "[t]he plaintiff instead clearly expressed verbally and through his written communications" that he expected an additional $300 per month. It further noted that "[w]hile it might have made better business sense to seek to evict the defendant from the property back in 2001, the [plaintiff] testified that he did not do so because this was a shelter for the homeless and there was nowhere else in town for the people to go. The [plaintiff] should not be penalized by this decision." We agree with the court in this regard. The court also found that the plaintiff repeatedly had requested payment of the additional $300 per month both orally and in writing. As such, we conclude that there was no waiver of the plaintiff's right to collect the full $2500 per month.

## II

We now turn to the defendant's claim concerning the division of the costs of repair to the building. Once the defendant vacated the building, the plaintiff discovered that there was damage to the premises from a leaky sink and additional harm under the washer-dryer, and behind the furniture. The lease agreement contained a clause providing that "[t]he [plaintiff] shall maintain the demised premises, including the building and any and all equipment, fixtures and appurtenances furnished by the [plaintiff] except in case of damage arising from the act of negligence of the [defendant]." The court found that the damage to the premises was "beyond normal wear and tear." It also was unable to determine, however, if, and to what extent, the plaintiff was notified of needed repairs throughout the course of the tenancy. The court indicated that if the damage was not reported to the plaintiff in a timely manner, the damage would have been due to the defendant's negligence. On the other hand, if the damage was reported to the plaintiff, it would be, at least in part, attributable

to the plaintiff's failure to address the issues. In any event, the court "believe[d] the testimony of the defendant that [it] did make several verbal requests over the years for the [plaintiff] to make repairs to the property, and that the plaintiff refused to contribute in any way to the repairs." The court found that restoration of the building required $26,398 but stated that it was "unable to ascertain which conditions the tenant made the landlord aware of and asked him to repair and which ones [it] did not." The court thereafter decided to simply divide the cost of repair equally between the parties.

We conclude that this damages award was an abuse of the court's discretion. The plaintiff must prove the damages attributable to the defendant by a preponderance of the evidence. *Bronson & Townsend Co.* v. *Battistoni*, 167 Conn. 321, 326, 355 A.2d 299 (1974). "The burden is on the plaintiff to present evidence which affords a reasonable basis for measuring her loss." (Internal quotation marks omitted.) *Spera* v. *Audiotape Corp.*, 1 Conn. App. 629, 633, 474 A.2d 481 (1984). The court was "unable to ascertain" the amount of damage attributable to the defendant. Although the plaintiff may have met his burden of proving that some liability existed on the part of the defendant, it is clear from the court's inability to ascertain the amount of damages attributable to each party that he did not meet his burden for establishing the amount of damages. The court, therefore, abused its discretion in awarding any monetary damages.[5]

---

[5] Because we hold that the court abused its discretion in determining that the defendant owed damages for harm to the building, we need not address the appropriate method of calculating those damages. We note, however, that the proper measure for damage to leasehold property is "the diminished value of the property whenever the costs of restorations is dramatically larger than is the difference in value. The purpose of this rule is to avoid unreasonable economic waste." *Spera* v. *Audiotape Corp.*, supra, 1 Conn. App. 633. This measure of damages was not presented to the trial court or in this appeal by either party.

The judgment is reversed only as to the award of $26,398 for repairs and the case is remanded with direction to vacate that damages award. The judgment is affirmed in all other respects.

In this opinion the other judges concurred.